PER CURIAM.
The plaintiff/appellant, Wendy Clifton Gaska, brought an action for wrongful death against Exxon Corporation for the death of her husband, Jason Clifton, who was killed when he attempted to cut open a gasoline storage tank with a power saw. Mrs. Gaska sued Exxon and alleged that Exxon had failed to de-gas the tank prior to the time that it sold the tank, and that it failed to check for the presence of explosive materials. Mrs. Gaska sued Everglades because it was the owner of the land where the gasoline tank was stored. The trial court entered a final summary judgment in favor of the defendants, Everglades and Exxon Corporation. We affirm the summary judgment which was entered in favor of Everglades. There is no common law duty which requires a landowner to provide a safe work place for employees of a subcontractor who is working on the premises. See Goodman v. Kendall Gate-Investco, Inc., 395 So.2d 240 (Fla. 3d DCA 1981.)
As to the summary judgment which was entered in favor of Exxon on the counts for strict liability and negligence, we reverse. Exxon argues that it sold its tanks “as is, where is” and therefore it had no duty to de-gas the tanks. We reject this argument. Plaintiff's expert, Patrick McGinley, testified by affidavit that Exxon’s actions were in contravention of applicable industry codes. Thus there is a question of whether industry standards required Exxon to de-gas the tank before allowing it to be removed from the site or whether Exxon was required to check for explosive materials prior to any sale. Exxon’s responsibility for this dangerous condition cannot be avoided by merely selling the tank “as is” since its duty is nondelegable. Noack v. B.L. Watters, Inc., 410 So.2d 1375 (Fla. 5th DCA 1982) (employer may be vicariously liable for acts of independent contractors to whom he delegates duty expressly undertaken under specific agreement or which is inherently dangerous.)
Additional disputed issues of fact also precluded summary judgment, one being, whether or not the tank in question was an Exxon tank. Mr. Goss, who was hired by A & W to excavate the tank, shed some light on this issue when he testified in his deposition that these tanks were removed from Exxon stations. He testified that he showed Clifton where to deliver the tanks and testified that Clifton was the one who took the tanks to the site for cutting. Goss testified that it was the Exxon tanks which were to be cut by Clifton. Additionally Clarence Hull, the president of A & W, indicated in his deposition that it was the Exxon tanks which were removed and taken to the Lox Road site for cutting. Although this testimony does not conclusively establish that it was an Exxon tank which was involved in the accident, it does permit an inference that the tanks belonged to Exxon, thus raising an issue of fact as to ownership which precluded summary judgment.
Accordingly we affirm in part, reverse in part and remand for further consistent proceedings.
DOWNEY, ANSTEAD and WALDEN, JJ., concur.