## CIRCUIT COURT OF THE CITY OF NORFOLK

Melvin R. Marslender

v.

Virginia Elec. and Power Co.

July 31, 1995

Case No. (Law) L90-2563

BY JUDGE JOHN C. MORRISON, JR.

This matter is pending on a motion by Melvin R. Marslender to exclude regulations issued under the Occupational Safety and Health Act ("OSHA") from evidence and a motion in limine by Virginia Electric and Power Company ("VEPCO") to exclude various testimony and evidence.

The relevant facts are as follows. On April 28, 1989, Plaintiff and several co-workers were using a crane to move steel beams on the property of their employer, Globe Iron Construction Company. Plaintiff was injured when the crane and an electric power line owned by VEPCO came into contact. Electricity from the power line travelled through the crane to a metal beam that Plaintiff was guiding with his hands. The accident resulted in the amputation of Plaintiff's arms and legs.

Plaintiff seeks to bar Defendant from introducing OSHA regulations as evidence of foreseeability, contributory negligence, assumption of risk, or negligence per se. Defendant is before the court on a motion in limine to exclude evidence: (1) that VEPCO had any legal duty to insulate its lines with wrap material, bury the lines underground, or segregate the lines with a tap fuse; (2) that VEPCO had any legal duty to monitor the activities of Globe Iron after the 1988 accident; and (3) of any incidents involving

VEPCO lines, except the April 21, 1988, and April 28, 1989, accidents involving the crane.[1] Each motion will be considered in turn below.

I. Plaintiff contends that OSHA regulations, adopted in Virginia, governing operations near electric power lines should be excluded from jury consideration. Under 29 C.F.R. § 1910.180(j)(3), electrical power line owners must be notified before the commencement of operations near such lines. Similarly, 29 C.F.R. § 1910.180(j)(1)(i) prohibits the use of cranes within 10 feet of energized power lines. Plaintiff argues that these regulations are inadmissible as evidence on the issues of foreseeability, contributory negligence, assumption of risk, and negligence per se.

Plaintiff relies primarily on 29 U.S.C. § 653(b)(4), which provides:

> Nothing in this Act shall be construed to supersede or in any manner effect any workman's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases or death or employees arising out of, or in the course of, employment.[2]

Plaintiff maintains that the introduction of OSHA regulations for any of the evidentiary purposes described above would affect the common law rights of Plaintiff in violation of § 653(b)(4).

The extent to which OSHA regulations may be relied upon in negligence actions has not been resolved in Virginia. However, other jurisdictions have considered this issue. Courts unanimously agree that § 653(b)(4), relied on by Plaintiff, stands only for the proposition that OSHA regulations do not create a private right of action. *See, e.g., Practico v. Portland Terminal Co.*, 783 F.2d 255, 265-67 (1st Cir. 1985); *Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231, 1238 (5th Cir. 1982); *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323 (4th Cir. 1974). Accordingly, a number of courts have concluded that OSHA regulations are relevant in determining the standard of care in negligence actions. *See, e.g., Practico*, 783

---

[1] Defendant's motion in limine also requests that VEPCO's internal rules, including its Policy and Procedures Manual and any other VEPCO manuals, be excluded from evidence at trial. The Court need not address this issue because Plaintiff now concedes that such evidence is inadmissible.

[2] Plaintiff also relies on similar language contained in Virginia's Overhead High Voltage Safety Act. *See* Va. Code Ann. § 59.1-414 (Michie 1950). However, that act became effective after Plaintiff's cause of action arose and is, therefore, inapplicable in this case.

F.2d at 267; *Rabon v. Automatic Fasteners, Inc.*, 672 F.2d 1231, 1238 (5th Cir. 1982). Although these cases are not binding precedent in this Court, their reasoning is convincing. Therefore, the Court will allow Defendant to introduce OSHA regulations as evidence of the duty of care that Plaintiff was required to exercise for his own safety.

It should be noted that most of the cases cited by Defendant have involved actions in which employees sought to introduce OSHA regulations as evidence of the duty of care owed by an employer. The fact that in this case OSHA regulations are being introduced against an employee by a person other than his employer is of no consequence. Under both federal and state law, "each employee shall comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct." 29 U.S.C. § 654(b); *see also* Va. Code § 40.1-51.2(a) (Michie 1950).

Courts have been more reluctant to conclude that a violation of OSHA regulations is negligence per se. *See generally* Annotation, *Violation of OSHA Regulation As Affecting Tort Liability*, 79 A.L.R.3d § 4 (1977 & Supp. 1994) (personal injury lawyers more successful in getting OSHA violations before the jury as evidence of negligence than as negligence per se); 61 Am. Jur. 2d, *Plant and Job Safety*, § 28 (1981 & Supp. 1994) (courts split as to whether violations of OSHA regulations are negligence per se). The Virginia General Assembly has enacted provisions that track the OSHA regulations that Defendant seeks to introduce and has explicitly mandated that such provisions are inadmissible as negligence per se. *See* Va. Code Ann. §§ 59.1-406 through 59.1-414 (Michie 1950). Since the Virginia enactments became effective several months after Plaintiff's cause of action accrued, they are not conclusive. Nevertheless, given the past uncertainty on the issue, this Court holds that Defendant may not introduce Plaintiff's alleged violations of OSHA regulations as negligence per se.

Lastly, Defendant provides no convincing authority that OSHA regulations are admissible as evidence of foreseeability and assumption of risk. Therefore, the Court finds that the regulations are inadmissible on those issues.

II. Defendant first argues that Plaintiff should not be allowed to introduce at trial expert testimony that Defendant could have eliminated or reduced the danger of the overhead electrical wires by burying them, insulating them, or by using a tap fuse. VEPCO maintains that it had no legal duty to use any of these alternative safety measures.

The Virginia Supreme Court has stated that "the duty of insulating, in the sense of covering the wires, is not absolute, and if a company maintains its wires at such height that it is not reasonable to anticipate contact with them, further insulating is not required." *Virginia Elec. & Power Co. v. McCleese*, 206 Va. 127, 131 (quoting *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776, 783-84). However, "[A]t places where others have a right and reasonably may be expected to go for work, business, or pleasure, there is a duty to keep wires carrying a dangerous voltage properly insulated . . . ." *Id.; See also, Andrews v. Appalachian Electrical Power Co.*, 192 Va. 150 (1951) (no duty to insulate wires placed at a proper height to guard against injuries occasioned by their falling).

The above authority makes clear that VEPCO's decision to place electrical wires above the ground was a viable safety option. Defendant was under no duty to place such lines underground. Accordingly, testimony relating to that issue is excluded. Additionally, there is no dispute that VEPCO's wires were not insulated. Therefore, under *McCleese*, if VEPCO's wires were at a height at which VEPCO could have reasonably anticipated contact with them, then VEPCO breached its duty of care. Conversely, if the wires were high enough so that contact was not reasonably foreseeable, VEPCO did not breach its duty, notwithstanding the failure to insulate. Accordingly, any cost/safety analysis by Defendant regarding insulation is irrelevant and, therefore, will not be admitted at trial.

With respect to tap fuses, no authority has been offered as to whether a legal duty to use such devices exists or does not exist. Thus, the Court does not at this time exclude testimony or evidence regarding the propriety of using such devices.

III. Next, Defendant asks the Court to exclude expert testimony that it had a duty to monitor Globe Iron's activities to determine if Globe Iron was continuing to use a crane in its yard.

"It is well settled in this jurisdiction and elsewhere that those who engage in the production and distribution of electricity must exercise a high degree of care." *Trimyer*, 192 Va. at 783. This degree of care "includes the duty of making reasonable and proper inspection of their wires and appliances." *Andrews*, 192 Va. at 156. "How often inspection should be made depends upon the circumstances of the particular case and is ordinarily a matter for the jury." *Id.* Under no circumstances, however, are electric companies the insurers against accidents. *See id.* Nor are they under a duty to continuously monitor the land underneath their power lines to ensure that equipment will not be used in dangerous proximity. *See,*

*e.g., Dunnaway v. Duquesne Light Co.*, 423 F.2d 66, 69 (3d Cir. 1970); *Guglielmo v. Scotti & Sons, Inc.*, 58 F.R.D. 413 (W.D. Pa. 1973). Accordingly, any testimony or evidence pertaining to the reasonableness of VEPCO's inspection and maintenance of its power lines at the Globe Iron plant is admissible and will not be excluded at trial. However, Plaintiff will not be allowed to introduce testimony regarding a duty by VEPCO to continually monitor Globe Iron's activities.

IV. Defendant's last contention is that the Court should exclude evidence of incidents involving VEPCO power lines other than those that occurred on April 21, 1988, and April 28, 1989. The Court does not have a sufficient amount of information to exclude evidence of all other incidents that occurred. Thus, the admissibility of such evidence will necessarily be dealt with by the Court at trial.