Lawrence MacNAMARA, et al., Plaintiffs,

v.

**COUNTY COUNCIL OF SUSSEX COUNTY, et al., Defendants,**

v.

**DELAWARE ELECTRIC COOPERATIVE, INC., Intervenor Defendant.**

**Civ. A. 89–625–CMW.**

United States District Court, D. Delaware.

May 25, 1990.

---

Thomas Stephen Neuberger, Wilmington, Del., for plaintiffs.

Robert V. Witsil, Jr., Georgetown, Del., for defendants, Individual Com'n Members of Sussex County Planning & Zoning Com'n.

T. Richard Keyes, III, James F. Bailey & Associates, Wilmington, Del., for defendants, County Council of Sussex County, County Planning & Zoning Com'n of Sussex County, and the individual members in their official capacities.

John Terence Jaywork, Hudson, Jones, Jaywork, Williams & Liguori, Dover, Del., for intervenor defendant, Del. Elec. Co-op., Inc.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Plaintiffs filed this § 1983 action on November 9, 1989 against the Sussex County Planning and Zoning Commission and the Sussex County Council, and the members thereof. Plaintiffs allege that the defendants' approval of a conditional use of a parcel of land located near plaintiffs' property violated plaintiffs' constitutional rights. By stipulation of counsel, the Delaware Electric Cooperative was added as an intervenor-defendant. Defendants have moved to dismiss the complaint for failure to state a claim,[1] and the cooperative has filed a separate motion to dismiss. The court has jurisdiction pursuant to 28

---

1. In addition to asserting that the complaint fails to state a claim on which relief can be granted, the defendants' motion also seeks dismissal on three "jurisdictional" grounds. However, an analysis of the three grounds indicates that they are not jurisdictional but are based on failure to state a claim. First, the defendants contend that the court lacks subject matter jurisdiction because the case involves sensitive state matters, and defendants ask the court to abstain from determining the case. However, a dismissal on abstention grounds is a dismissal under Rule 12(b)(6). *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 745 (3d Cir.), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). Second, defendants assert that the court lacks personal jurisdiction over the indi-

vidual defendants based on official immunity. An objection based on official immunity, however, is appropriately analyzed under Rule 12(b)(6). *See* 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–68, 69 (2d ed. 1989). Finally, defendants assert a lack of jurisdiction based on the absence of a federal constitutional issue. However, if a plaintiff's constitutional claim is found wanting, the preferable practice is to treat a motion to dismiss as having been made under Rule 12(b)(6), rather than 12(b)(1), unless the claim is clearly frivolous or wholly insubstantial. *Id.* at ¶ 12.07[2.–1]. The court will therefore treat defendants' motion to dismiss as having been made pursuant to Rule 12(b)(6).

U.S.C. § 1343(a)(3) and 28 U.S.C. § 1331.[2]

## FACTUAL BACKGROUND

[2] The court will accept as true all the well-pleaded facts of the complaint, as it must do under a Rule 12(b)(6) motion. *See Satellite Financial Planning Corp. v. First National Bank,* 646 F.Supp. 118, 120 (D.Del.1986).[3] On February 15, 1989, the Delaware Electric Cooperative (hereinafter referred to as "the cooperative") executed a contract to purchase a one-acre parcel of land in Sussex County, Delaware. On June 1, the cooperative filed with the Sussex County Planning and Zoning Commission (hereinafter referred to as "the commission") an application to amend the zoning map of Sussex County to permit the conditional use of the parcel of land for an electric power substation.[4,5] The parcel is located near the parcels owned by plaintiffs, although not adjacent to any of the plaintiffs' land.[6] A public hearing on the rezoning application was scheduled for August 10, 1989 before the commission, and a public hearing before the Sussex County Council (hereinafter referred to as "the council") was scheduled for August 29, 1989. Pursuant to Delaware law, notice of the two public hearings was published at least 15 days before the hearings in two newspapers of general circulation in the county. In addition, although not required by Delaware law, the commission mailed notice of the August 10 hearing to ten property owners, including four of the five plaintiffs in this matter.[7]

Once plaintiffs received notice of the August 10 hearing, they met with their attorney and began to prepare an opposition to the rezoning application. Their research uncovered literature on health hazards arising from living near electrical substations.

---

**2.** Plaintiffs have alleged a cause of action under 42 U.S.C. § 1983. The specific jurisdictional grant for claims under that statute is 28 U.S.C. § 1343(a)(3). *See* 1 J. Moore, J. Lucas, H. Fink, D. Weckstein & J. Wicker, *Moore's Federal Practice* ¶ 0.62[9], at 700.12 (2d ed. 1990).

**3.** The parties have submitted to the court certain material extraneous to the pleadings, such as minutes of council and planning commission meetings and various scientific papers. Rule 12(b) provides that, on a 12(b)(6) motion, if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment, and all parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by Rule 56. The court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1366, at 678 (1969). This discretion generally will be exercised in favor of allowing the material if the material and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure are likely to facilitate the disposition of the action. *Id.* at 678–79. The court has determined that it will exclude the material from its consideration, and thus the motion remains a 12(b)(6) motion.

**4.** The zoning statute applicable to Sussex County provides that the county government shall appoint a permanent planning and zoning commission of five members. Del.Code Ann. tit. 9, § 6905 (1989). A rezoning proposal must first be submitted to the commission. *Id.* at § 6911(a). The commission must hold at least one public hearing on the proposal, and must publish notice of the hearing at least 15 days prior to the hearing in two newspapers of general circulation in the county. *Id.* at §§ 6812, 6911(b). The commission has 45 days after submission of the proposal in which to issue a report on it. *Id.* at § 6911(c). The county government may adopt or reject the commission's report. *Id.* Before adopting any zoning changes, the county government must also hold a public hearing and publish notice. *Id.* at §§ 6911(c), 7002(m)(2).

**5.** Defendants state that the amendment was necessary because the property was zoned agricultural-residential.

**6.** The MacNamaras own one parcel and Dominick and Jean Colombo own one parcel. Both of those parcels are undeveloped. Mary Colombo owns two parcels, and there is a residence on those lots. There is one irregularly-shaped parcel of land separating the closest of plaintiffs' plots from the cooperative's land. The MacNamaras' parcel is up to 100 feet away from the cooperative's land; the Colombos' parcel is up to 200 feet away from the cooperative's land; and Mary Colombo's parcels are up to 400 and 500 feet from the cooperative's lot.

**7.** Lawrence and Joanne MacNamara and Dominick and Jean Colombo received the notice on July 28, 13 days prior to the commission hearing. Plaintiff Mary Colombo received no individual written notice. Defendants state that such individual notice is sent pursuant to a county policy that property owners within 200 feet of a parcel subject to rezoning be notified.

However, plaintiffs unsuccessfully attempted to obtain an expert who could testify on their behalf concerning those health hazards. Further, despite plaintiffs' belief that the substation would lower their property values, they were unable to obtain an expert to testify on that issue.

On August 10, plaintiffs appeared with counsel before the commission. Plaintiffs requested that the hearing be continued for 45 days in order to give them an opportunity to develop evidence in support of their position. The commission did not rule on the continuance request, but rather proceeded with the hearing. The cooperative presented the live testimony of an employee, Mr. Spain, who testified that the substation would not generate pollution or affect television reception, would generate only an occasional hum, and would have no adverse effect on property values. At the conclusion of Mr. Spain's testimony, which was unsworn,[8] plaintiffs' counsel requested the opportunity to cross-examine him to learn more about the nature of the substation and the selection of the particular site, and to challenge his assertions concerning pollution and property values. The request was denied after the commission's attorney, Peter Jones, advised the commission that it had the right to deny the request. Mr. Jones is also an attorney for the cooperative.[9]

After the cooperative presented its case, the plaintiffs presented their case through Mr. MacNamara's live testimony and through an affidavit, exhibits, and a legal brief submitted to the commission. Plaintiffs contended that the substation would be too close to a residential area; that it would lower property values in the surrounding neighborhood; that it would interfere with electrical appliances and cause excessive noise; that it would have serious adverse health effects on the surrounding community; that it would alter the basic character of the neighborhood; and that there were alternate sites nearby that could be used for the substation and that were not located near homes. The commission then allowed the cooperative to call an electrical engineer as a rebuttal witness, and plaintiffs were denied the opportunity to cross-examine him. During the course of the hearing, David Rutt, the attorney presenting the cooperative's case, indicated that plaintiffs were outsiders from New Castle County, Delaware.[10] The commission did not rule on the rezoning application at the hearing, but carried the matter forward and recommended approval of it at its August 24 meeting.

Following the August 10 hearing, plaintiffs requested a postponement of the August 29 council meeting. The county attorney denied the request and also indicated that cross-examination of witnesses would not be allowed. At the council meeting, plaintiffs appeared through counsel and submitted objections, record testimony, a brief, and several scientific articles indicating the health hazards caused by living near electrical substations.[11] During the hearing, a council member raised the issue of the plaintiffs' residence outside of Sussex County. At the conclusion of the hearing, the council delayed its decision for 30 days to obtain technical advice on any adverse health effects caused by electrical substations. The council subsequently received a 1985 study on this issue prepared for the power industry, and the plaintiffs submitted a 1989 study which found some evidence that low-level electromagnetic fields promote cancer and affect the central nervous system. On October 10, 1989, the council approved the rezoning application.

---

**8.** Plaintiffs object to the fact that the testimony given on behalf of the cooperative was unsworn.

**9.** Mr. Jones initially indicated that he could not advise the commission because of his conflict of interest. Nonetheless, he told the commission that it could deny the plaintiffs' request.

**10.** Mary Colombo has resided in Sussex County for part of the year since the 1950s. The re- maining plaintiffs, who are members of Mary Colombo's family and whose land is undeveloped, have lived with Mrs. Colombo part of the year since the 1960s. Plaintiffs view the reference to "outsiders" as an appeal to prejudice.

**11.** The health hazards reported by the articles include fetal genetic defects, stillbirths, and increased cancer risk.

Plaintiffs brought this suit on November 9, 1989, against the council, five council members in their official capacities,[12] the commission, and five commission members in their official and individual capacities. Plaintiffs brought the case pursuant to 42 U.S.C. § 1983. Count I of the complaint alleges that plaintiffs were denied their constitutional right to due process of law with respect to the public hearings because they were denied the opportunity to cross-examine witnesses; they were denied a fair opportunity to present their case; they were denied adequate notice of the proceedings;[13] and the decisions rendered may have been the result of an appeal to "regional bias". Count II of the complaint asserts that plaintiffs have been denied their constitutional right to substantive due process because the decisions were arbitrary and without a rational basis. Count III asserts pendent state claims under Delaware law. The plaintiffs seek a declaratory judgment that defendants' actions violated the federal and state constitutions and laws; a permanent injunction invalidating the rezoning; and compensatory and punitive damages.

On November 27, 1989, defendants filed a motion to dismiss the complaint. As discussed above, the motion asserts that the court should abstain from deciding this case because it involves sensitive issues of state and county zoning law and unsettled issues of state law; that the commission members are immune from claims of civil damages based on the doctrine of absolute immunity; and that the complaint fails to identify a federal due process requirement that mandates cross-examination of witnesses at hearings of the type held, individual notice of such hearings, and a fair opportunity for opponents of a zoning application to present their case.[14] The cooperative filed a motion to dismiss on January 5, 1990, asserting similar grounds for dismissal.

For the reasons discussed below, the court grants the motions.

## PRELIMINARY DISCUSSION

Fed.R.Civ.P. 12(b)(6) provides that a complaint can be dismissed for failure to state a claim upon which relief can be granted. In ruling on a dismissal motion, the court must accept all the well-pleaded facts of the complaint as true. *See Satellite Financial Planning Corp. v. First National Bank*, 646 F.Supp. 118, 120 (D.Del.1986). The burden is on the movant to demonstrate that no claim has been stated. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–63 (2d ed. 1989). A court can dismiss a complaint for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Plaintiffs brought this suit pursuant to 42 U.S.C. § 1983.[15] The two elements a plaintiff must show in a § 1983 claim are: 1. the conduct complained of was committed by a person acting under color of state law, and 2. the conduct deprived the plaintiff of rights, privileges, or immunities se-

---

**12.** One of the council members named in the complaint was Oliver E. Hill. However, since Mr. Hill has been succeeded in his office by Dale Dukes, the parties have agreed to substitute Dale Dukes for Mr. Hill as a defendant in this matter.

**13.** The complaint initially alleged that the published notice was legally insufficient. Plaintiffs have withdrawn that allegation, and are not contesting the adequacy of the published notice pursuant to statutory requirements. However, plaintiffs appear to contend that notice should have been given beyond that required under state law.

**14.** The motion also seeks dismissal of plaintiffs' punitive damages claim on the basis of municipal immunity, and reasonable attorney fees on the ground that the complaint is frivolous.

**15.** 42 U.S.C. § 1983 states, in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

cured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986). The defendants have not contested the fact that they acted under color of state law. Plaintiffs seek to meet the second element of a § 1983 claim by alleging violations of their constitutional rights to procedural and substantive due process.

## ABSTENTION

■ The first issue the court will address is whether it should abstain from hearing this matter. Abstention is a judicially-created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or state agency will have the opportunity to decide the matters in issue. *Heritage Farms, Inc. v. Solebury Township,* 671 F.2d 743, 746 (3d Cir.), *cert. denied,* 456 U.S. 990, 102 S.Ct. 2270, 73 L.Ed.2d 1285 (1982). The doctrine arose as a means of avoiding unnecessary conflicts between the federal judiciary and state government. *Id.* However, abstention is a narrow exception to the federal judiciary's responsibility to adjudicate cases properly before it. *Id.*

■ The Supreme Court has recognized three situations in which abstention is appropriate, *id.,* and the defendants seek abstention on two of those grounds. Under *Pullman* abstention, a court may abstain when there is an unsettled question of state law, the resolution of which would affect the decision of a federal constitutional issue, either by obviating the need to decide it or by changing the light in which it must be viewed. *Id.* (citing *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941)). *Burford* abstention provides that, where timely and adequate state court review is available, a federal court

sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies when there are difficult questions of state law bearing on policy problems of substantial public import, or when the exercise of federal review would disrupt state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Public Service, Inc. v. Council of New Orleans,* — U.S. —, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989). *Burford* abstention is concerned with protecting complex state administrative processes from undue federal interference. *Id.*

■ The court holds that neither *Pullman* nor *Burford* abstention is appropriate in this case. The court finds that *Pullman* abstention does not apply because the defendants have pointed to no uncertain issue of state law, and the court has discerned no such issue. *See Heritage Farms,* 671 F.2d at 747 (*Pullman* abstention is inappropriate when state law is settled). The court also finds that *Burford* abstention is inappropriate, for two reasons. First, this case presents no difficult questions of state law. Second, the exercise of federal review would not disrupt state efforts to establish a coherent zoning policy. There is no uniform Delaware statutory law concerning zoning, as each county has its own zoning law. *See* Del.Code Ann. tit. 9, ch. 26 (1989) (New Castle County); *id.* at ch. 49 (Kent County); *id.* at ch. 69 (Sussex County); *see also Heritage Farms,* 671 F.2d at 747 (since municipal planning commissions direct land development, there is no uniform state policy for land use and development). Further, Delaware does not provide for uniform review of zoning decisions in state courts.[16] *See Burford v. Sun Oil Co.,* 319 U.S. 315, 326, 333–34, 63 S.Ct. 1098, 1103, 1107–08, 87 L.Ed. 1424 (1943) (abstention appropriate given the fact that Texas had provided for centralized review in certain

**16.** Defendants contend that Delaware law mandates the appeal of rezoning decisions to the state courts. The court disagrees. Del.Code Ann. tit. 10, § 8126(a) (1975), cited by defendants, merely sets forth a limitations period applicable to state court actions challenging

zoning regulations. The statute does not provide for state court review of zoning decisions, and neither does the Sussex County zoning statute. *See* Del.Code Ann. tit. 9, ch. 69 (1989); Del.Code Ann. tit. 10, § 8126(a) (1975).

state courts of orders issued by the Texas Railroad Commission).[17] As neither *Pullman* nor *Burford* abstention applies, the court will not abstain from deciding this matter. *See* D. Mandelker, *Land Use Law* § 8.40 (2d ed. 1988) (federal courts usually do not apply *Burford* abstention in land use cases; courts emphasize that local land use regulation is piecemeal and fragmented, that it is not state policy, and that judicial review is not concentrated in a single court; in addition, courts state that *Burford* abstention is disfavored in civil rights cases).

## DUE PROCESS

 Plaintiffs have alleged a denial of their constitutional rights to substantive and procedural due process. The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The right to due process has substantive and procedural components. In analyzing a substantive or procedural due process claim, a court must first determine whether a constitutionally protected liberty or property interest is present. *Spence v. Zimmerman*, 873 F.2d 256, 258 (11th Cir.1989) (under substantive due process, plaintiffs must establish protected property interest); *RRI Realty Corp. v. Inc. Village of Southampton*, 870 F.2d 911, 914–18 (2d Cir.) (Second Circuit examines whether a protected interest exists for substantive due process claims), *cert. denied,* ── U.S. ──, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Brandywine Affiliate, NCCEA/DSEA v. Board of Education*, 555 F.Supp. 852, 860 (D.Del.1983) (procedural due process).

Property interests are not created by the constitution; rather, they stem from such sources as state law. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).[18] Although land ownership might initially appear to present a straightforward example of a protected property interest, it is far from clear that every impact on landownership caused by zoning regulations creates a right to process. *Developments in the Law—Zoning*, 91 Harv.L.Rev. 1427, 1514 (1978).

Plaintiffs contend that they have statutorily-protected interests in their health and in the maintenance of existing property values. Plaintiffs point to Del.Code Ann. tit. 9, § 6904 (1989) in support of their position. That statute provides that zoning regulations adopted by Sussex County shall be adopted for the purpose of promoting, among other things, the health of the inhabitants of Sussex County. Del.Code Ann. tit. 9, § 6904(a) (1989). The statute further provides that the regulations shall be made with reasonable consideration given to, among other things, the conservation of property values. *Id.* at § 6904(b). Plaintiffs also point to the Sussex County Zoning Ordinance, which is virtually identical to the state statute. *See* Sussex County Zoning Ordinance, Art. 2.

 The court finds that the statute and the ordinance cited by plaintiffs do not create constitutionally protected interests. In order for a statute to create a protected property interest, the statute must give a person a legitimate claim of entitlement to a benefit, rather than a mere expectation of receiving it. *Board of Regents v. Roth*,

---

17. Defendants also contend that plaintiffs should have pursued an inverse condemnation proceeding, over which the Delaware Superior Court purportedly has exclusive jurisdiction. However, plaintiffs are not asserting a taking claim. *See* D. Mandelker, *Land Use Law* § 8.19 (2d ed. 1988) (inverse condemnation is a remedy a landowner may seek when he or she is asserting a taking). Further, it is unclear whether the Delaware condemnation statute cited by defendants applies to inverse condemnation actions. *See* Del.Code Ann. tit. 10, § 6102 (1975); *Delmarva Power & Light Co. v. City of Seaford*, 523 A.2d 973, 976 (Del.Super.1987).

18. Under procedural due process, once a constitutionally protected interest is found, the court must then determine whether the deprivation of that interest complied with the requirements of due process. *Brandywine Affiliate*, 555 F.Supp. at 861. Under substantive due process, when there is no fundamental right involved, the court must determine whether the governmental action is rationally related to a legitimate state interest. *Rogin v. Bensalem Township*, 616 F.2d 680, 689 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The language cited by plaintiffs merely lists the factors the county government should consider in adopting zoning regulations. It does not by any stretch of the imagination create constitutionally protected interests in health or in property values.[19]

■ The plaintiffs have alleged no other basis on which they claim a protected liberty or property interest. The court has struggled to locate some basis for finding a protected interest, but has been unable to do so. First, the court attempted to find authority for the view that there is a constitutionally protected liberty interest in a person's health. A respected treatise on constitutional law does not mention any protected health interest, see 2 R. Rotunda, J. Nowak, & J. Young, *Treatise on Constitutional Law: Substance and Procedure* §§ 17.1–17.6 (1986), and the only cases the court has found on the issue clearly state that there is no constitutional right to a healthful environment. *In re "Agent Orange" Product Liability Litigation*, 475 F.Supp. 928, 934 (E.D.N.Y.1979); *Federal Employees for Non-Smokers' Rights (FENSR) v. United States*, 446 F.Supp. 181, 185 (D.D.C.1978) (the courts have never seriously considered the right to a clean environment to be constitutionally protected under the Fifth and Fourteenth Amendments) (quoting *Gasper v. Louisiana Stadium and Exposition District*, 418 F.Supp. 716, 721–22 (E.D.La.1976), *aff'd*, 577 F.2d 897 (5th Cir.1978), *cert. denied*, 439 U.S. 1073, 99 S.Ct. 846, 59 L.Ed.2d 40 (1979)), *aff'd*, 598 F.2d 310 (D.C.Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).

■ Second, on the issue of property values, the court finds that, while property values might be considered a property interest, a diminution in those values is not recognized as a Fourteenth Amendment property deprivation. *See BAM Historic District Association v. Koch*, 723 F.2d 233, 237 (2d Cir.1983) (governmental action causing a decline in property values has never been held to deprive a person of property within the meaning of the Fourteenth Amendment); *Mehta v. Surles*, 720 F.Supp. 324, 331 (S.D.N.Y.1989) (mere diminution of property values is not a Fourteenth Amendment property deprivation); *see also Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978) (prior Supreme Court decisions uniformly reject the proposition that a diminution in property values, standing alone, can establish a taking).

■ Although the protected interests plaintiffs have pointed to concern health and property values, the complaint reveals another basis on which a protected interest might be found. The plaintiffs contend that the substation would interfere with electrical appliances and cause excessive levels of noise. Even assuming that a person has a protected interest in the unfettered use and enjoyment of his or her land, see L. Tribe, *American Constitutional Law* § 10–8, at 680 (2d ed. 1988) (due process requirements are implicated whenever government deprives an individual of an interest, derived from the common law, in peaceful possession or use of real or personal property); *Developments in the Law —Zoning*, 91 Harv.L.Rev. 1427, 1523 (1978), any property interest these plaintiffs might have does not rise to the level of Fourteenth Amendment protection. While some cases have been brought by persons who are owners of property adjacent to a rezoned parcel, *compare Fusco v. Connecticut*, 815 F.2d 201, 202, 205 (2d Cir.) (property in question was adjacent to that of plaintiffs; plaintiffs failed to allege a deprivation of property rights), *cert. denied*, 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987) *with Barbian v. Panagis*, 694 F.2d 476, 478, 488 n. 10 (7th Cir. 1982) (rezoned property was immediately adjacent to plaintiffs' lot; "it is not clear that a neighboring landowner's property interests are too negligible to require the

**19.** At oral argument, plaintiffs' counsel suggested that plaintiffs have a property interest in having the county government consider the factors enumerated in § 6904. The court is not persuaded by such an argument.

City to afford him a hearing...."), the court is unaware of any cases in which persons who merely own property in the neighborhood of a rezoned parcel have successfully claimed the deprivation of a constitutionally protected interest. Indeed, recourse to the courts becomes less crucial when governmental action affects a large group of people. *See Developments in the Law*, 91 Harv.L.Rev. at 1509 (if a large number of people is affected by the acts of a legislature, the electoral process provides recourse). The court therefore finds that plaintiffs have failed to allege a constitutionally protected interest, and thus have failed to state a claim.[20,21] The court will thus dismiss plaintiffs' federal claims. Since this case is still in its incipience, the court will also dismiss plaintiffs' state law claims. *See Thompson v. Community Action of Greater Wilmington*, 567 F.Supp. 1159, 1168 (D.Del.1983) (absent significant investment of time and resources in a particular case, the exercise of pendent jurisdiction is improper where the underlying federal claim is dismissed prior to trial). In addition, defendants have requested attorney fees on the ground that the complaint is unwarranted and frivolous. The court disagrees, and denies the fee request.

### CONCLUSION

The court hereby grants the defendants' and the intervenor-defendant's motions to dismiss, and dismisses the complaint in this matter. The court denies the defendants' request for attorney fees.

An Order will issue in accordance with this Opinion.

---

**20.** In addition, even if a constitutionally protected interest existed, the court finds that any deprivation of that interest as to the MacNamaras and Dominick and Jean Colombo would be de minimis or nonexistent. Their land is undeveloped, and thus the substation would apparently not in fact interfere with their use and enjoyment of the land.

**21.** Because of the court's resolution of this matter, it need not reach the other substantive issues addressed in the motions.