Albert F. **GUSTAFSON**, Plaintiff,

v.

**WARNER–LAMBERT COMPANY,** Defendant.

No. 92–843–CIV–T–17C.

United States District Court, M.D. Florida, Tampa Division.

July 13, 1993.

Ronald W. Fraley, Fraley & Fraley, Tampa, FL, for plaintiff.

Thomas John Roehn, Lawrence Phillip Ingram, Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL, for defendant.

## ORDER ON DEFENDANT WARNER–LAMBERT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF GUSTAFSON'S MOTION FOR PARTIAL SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on the Motion for Partial Summary Judgment filed by Plaintiff Albert F. Gustafson ("Gustafson") and Motion for Summary Judgment filed by Defendant Warner–Lambert Company ("Warner–Lambert").

This circuit clearly holds that a summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mount Pleasant*, 595 F.2d 994, 996–997 (5th Cir.1979), *citing Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

> "In our view the plain language of Rule 56(c) mandates the entry of a summary judgment after adequate time for discovery and upon motion against the party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

The Court also said: "Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a genuine issue for trial." *Id.* at, 324, 106 S.Ct. at 2553. See also *Eastman Kodak Co. v. Image Technical Services, Inc.*, — U.S. —, —, 112 S.Ct. 2072, 2083, 119 L.Ed.2d 265 (1992) (the non-moving party's inferences must be reasonable, quoting *Matsushita*[1]) (The moving party bears a substantial burden in showing that it is entitled to summary judgment.) It must show that despite evidence [to the contrary.... the inference of the non-moving party] is unreasonable.

### FACTS

Prior to November 1, 1991 the Plaintiff, Albert F. Gustafson ("Gustafson") was an employee of the American Chicle Division of

---

1. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348,

89 L.Ed.2d 538.

the Defendant, Warner–Lambert. On or about October 29, 1991, Warner–Lambert announced the 1991 Staff Reduction Program (hereinafter the "Program"). On November 1, 1991, Gustafson signed a separation agreement indicating his acceptance of the voluntary program (Plaintiff's Exhibit "C", Defendant's Exhibit "I").

There is no dispute that Gustafson was eligible to participate in this program and that he accepted Warner–Lambert's offer to participate (Plaintiff's Complaint, P. 10, Def. An., Defendant's Answer P. 10) (hereinafter referred to as Pl.Compl.Def.Ans. P.S.). The parties also stipulate to the fact that Gustafson was a participant or beneficiary of an ERISA plan. 29 U.S.C. § 1132(a) (Pl.Compl. P. 2, P. 7, Def.Ans. P. 1. ¶ 7). There is also no dispute that Warner–Lambert, as administrator of the VESPP is a plan administrator and fiduciary as defined by ERISA. 29 U.S.C. § 1002(16)(A)(ii), § 1002(21)(A). (Pl. Comp. P. 2 ¶ 8; Def.Ans. P. 1 ¶ 8). This program was called the Voluntary Enhancement Program. Gustafson's Affidavit Exh. B, P. 3; Plaintiff's first amended complaint P. 5).

On or about December 12, 1991, Warner–Lambert paid Gustafson 25% severance enhancement of his basic severance pursuant to the voluntary program. (Pl.Compl. P. 2, 3, P. 12). In late December of 1991, Gustafson was informed by Warner–Lambert that he would not receive basic severance pay under the voluntary program. That the company had determined that Gustafson had engaged in activities inimical to the interests of the company. Accordingly, pursuant to the Company's Severance Policy, Warner–Lambert also terminated Gustafson's health benefit as of December 3, 1991.

APPLICABLE STANDARD OF REVIEW

■ Plaintiff contends that the denial of ERISA benefits challenged under § 1132(a)(1)(B) is reviewable under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

to construe the terms of the plan (quoting *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 116, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Plaintiff adds that any such discretionary authority must be expressly provided for by the plan (quoting *Guy v. Southeastern Iron Workers Welfare Fund,* 877 F.2d 37, 38–39 (11th Cir.1989). Since there is no such language in *The Staff Reduction Program Booklet* authorizing Warner–Lambert to exercise its sole discretion in making benefits eligibility determination and in construing and interpreting the provisions of the plan, the standard of review which should govern the court's review should be *de novo.*

Defendant also agrees that if the employee benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe terms of the plan, then the arbitrary and capricious standard governs the court's review of a claim denial decision by the arbitrator. Defendant also relies on *Firestone* [2] and *Bedinghaus.* [3]

Defendant therefore contends that "the Warner–Lambert VESPP and Severance Policy No. 163 both contain the necessary and appropriate language reserving to Warner–Lambert the right to exercise its sole discretion in making benefits eligibility determinations and in construing and interpreting the provisions of the plan." Defendant concludes that the arbitrary and capricious standard is the appropriate standard for the court to use when reviewing Warner–Lambert's decision to terminate plaintiff's severance payments.

The Court holds that the administrator had discretionary authority to construe and interpret the summary plan description as stated at Article 14, Section 9.1 and Section 9.2 of the VESPP Defendant's Exhibit A:

"The administrator shall have discretionary authority to construe and interpret this plan and to determine eligibility for benefits hereunder, including the right to remedy, possible ambiguities, inconsistencies and amend rules and regulations for its administration."

---

2. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

3. *Bedinghaus v. Modern Graphic Arts, Inc.,* 782 F.Supp. 604, 607 (M.D.Fla.1992).

*Guisti v. General Elec. Co.*, 733 F.Supp. 141, 145 (N.D.N.Y.1990) states that: "Until recently it was well settled in the Second Circuit, and in almost every other federal circuit court, that '[i]n actions challenging the denial of benefits under an ERISA plan, review is limited to determining the administrator's decision was arbitrary and capricious.' " quoting *Schwartz v. Newweek, Inc.*, 827 F.2d 879, 881 (2d Cir.1987). The Supreme Court, however, has recently rejected the arbitrary and capricious standard of review in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that "consistent with established principles of trust law . . . a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956. *Clark*[4] quoting *Schein*[5] states that "de novo review is the default standard unless the plan *expressly* gives the administrator 'the power to construe uncertain terms or [provides] that eligibility determinations are to be given deference.' "

*Clark* holds that a " *'narrow view* of when a plan document confers discretionary authority is needed to check the potential for biased decisions on the part of ERISA plan administrators.' " The *Guisti* Court held that "a narrow construction is necessary in a situation, such as the one presently before this court. Where determinations on beneficiary claims under ERISA plan are controlled by a corporation which can profit from a decision to deny benefits. This court shares the concerns, with respect to the potential for conflicts of interest on the part of ERISA fiduciaries, . . . ." The *Guisti* Court was also concerned about situations where the administration of the plan did not consist of a committee of employers and employees but only one administrator who was also the

Human Resources Director. This is similar to the case before this Court where the administration is the Vice President of Human Resources.

This Court will allow the deferential arbitrary and capricious standard of review because of the clear language of the summary plan description but will be mindful of the potential for conflicts and for biased decisions by the plan administrator while making its determination.[6]

*Clark v. Bank of New York* holds that "if a plan confers discretion on a plan administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in' determining whether there is absence of discretion. . . ." *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57. In the case at hand, Peterson acted as both the plan administrator and the head of the Bank's personnel department. In such a dual capacity, he had an undeniable conflict of interest between his loyalties to his employer who had an interest in minimizing its obligations under the plan and his fiduciary obligations to the plan. See *Arthurs v. Metropolitan Life Insurance Company*, 760 F.Supp. 1095, 1098 (S.D.N.Y.1991).

WHETHER THE TERMS OF THE VOLUNTARY ENHANCED SEVERANCE AND PENSION PROGRAM AND SEVERANCE POLICY NO. 163 GOVERNED PLAINTIFF'S ENTITLEMENT TO SEVERANCE BENEFITS UNDER ERISA'S SUMMARY PLAN DESCRIPTION

In his Motion for Partial Summary Judgment, Plaintiff claims that the 1991 Staff Reduction Program (hereinafter, the "Booklet") is an ERISA Plan Document or Summary Plan Description (hereinafter "SPD") and because the Booklet contains no provision for termination of severance pay, Warner–Lambert may not terminate Plaintiff's severance pay. Plaintiff also claims that Warner–Lambert may not rely on the terms

---

**4.** *Clark v. Bank of New York*, 801 F.Supp. 1182 (1992).

**5.** *Schein v. News Am Publishing, Inc.*, 1991 WL 117638 at 3, 1991 U.S.Dist. LEXIS 8504, at 9–10 (S.D.N.Y. June 25, 1991).

**6.** See *Guisti*, 733 F.Supp. at 146–147.

and conditions of the Warner–Lambert Voluntary Enhanced Severance and Pension Program or the Warner–Lambert Severance Policy No. 163 as a basis to deny Plaintiff benefits. Plaintiff further states that Policy No. 163 was promulgated in October 1989, two years before Warner–Lambert's announcement of restructuring. Plaintiff contends that a summary plan description or plan document is to enable the parties to understand their rights and obligations under an employee benefit plan.

Defendant denies Plaintiff's allegations that the "Booklet" is an ERISA Summary Plan description because the "Booklet" does not contain the information ERISA and the courts have specified they must contain before any document may be deemed an SPD.

Defendant contends that the VESPP and the Booklet establishes that the Warner–Lambert VESPP contains all the ERISA-required information to constitute an ERISA SPD, and, that the VESPP was the ERISA SPD and that the administrator of the plan had properly reserved the right to determine eligibility for the plan and interpret the terms of the plan. The existence of an ERISA plan is question of fact to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987).

As stated in *Donovan*, "in determining whether a plan, fund or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedure for receiving benefits." *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.1982). A plan may exist even when it is not a formal written document. *Id. Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985) quoting *Donovan,*[7] states that failure to adhere to the requirements set forth in ERISA does not exempt an employer from coverage of the Act. *Id.* at 1503. However, *Scott* states that "there is good reason for distinguishing severance pay from the designated payroll practices ... Severance pay in contrast requires an extra disbursement of funds, above and beyond ordinary wages, at or after the termination of employment.... [A]n employer who ... terminates a large number of employees at once, may be faced with an extremely large severance liability. For these reasons, the danger that an employer may, because of lack of funds, default on an obligation to provide severance pay is greater.... This type of default is a central concern of ERISA." *Id.* at 1503.

*Blau v. Del Monte Corp.*, 748 F.2d 1348 at 1352 (9th Cir.1984) also holds that once established "ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting requirement detailed under ERISA."

 While it is clear that the VESPP incorporated Policy No. 163, the question of whether the VESPP was a Summary Plan Description under ERISA is a question of fact. *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310 (3rd Cir.1991) quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3rd Cir.1981) states that whether a document constitutes a summary plan description within the meaning of the relevant provision of ERISA, 29 U.S.C. § 1022, involves a determination of "ultimate fact" and is therefore subject to plenary review. Neither the "booklet" nor the VESPP is determinative of a summary plan description based on the facts.

## WHETHER THE "BOOKLET" MODIFIES THE VESPP AND ESTOPS WARNER–LAMBERT FROM RELYING ON THE TERMS OF THE PLAN

 Defendant contends that Plaintiff's amended complaint did not address the matter of ERISA plan estoppel or modification; therefore, the claim should not be addressed. This has changed with the recent ruling under *Eastman Kodak Co. v. Image Technical Services, Inc.*[8] All relevant issues must now be addressed. However, a reading of the

---

**7.** *Id.*

**8.** *Id.* at 2.

"Booklet" shows that the "Booklet" neither modifies the terms of the VESPP, nor estops Warner–Lambert from relying on the terms of the VESPP. "Overview brochure ... was not a "summary plan description" under ERISA where [the] brochure contained important internal reference to the summary plan description...." Likewise, the Booklet contained an internal reference to the VESP which compliments the VESPP rather than modifies the VESPP and does not estop Warner–Lambert from relying on the terms of the VESPP.

However, the important issue to be determined is whether the VESPP (including Policy No. 163) was the SPD and whether Warner–Lambert's termination of Plaintiff's severance was reasonable and in good faith.

WHETHER WARNER–LAMBERT'S TERMINATION OF PLAINTIFF'S SEVERANCE WAS REASONABLE AND IN GOOD FAITH

 Plaintiff argues that the Plan Booklet which Plaintiff accepts as the SPD is "conspicuously devoid of any reserved right of Warner–Lambert to terminate or not pay severance" (Plaintiff's Motion for Partial Summary Judgment, p. 16). Plaintiff contends that by the express terms of the 1991 Staff Reduction Program Booklet, he (Gustafson) is entitled to receive his basic severance. Plaintiff also contends that the VESPP has none of the indicia of a plan document or summary description quoting *Alday v. Container Corp. of America,* 906 F.2d 660 (11th Cir.1985).

Defendant alleges that Plaintiff's misconduct disqualifies him from obtaining any further severance payments from the Company and quotes *Woolsey v. Marion Laboratories, Inc.,* 934 F.2d 1452 (10th Cir.1991), which held that fiduciaries of a pension plan may properly consider misconduct or other acts of the claimant which "adversely affect the employer or which violates Company policy," when making decisions regarding the form of benefits payments. *Id.* at 1458.

In his motion for summary judgment, Plaintiff hardly addresses the question of whether he did anything inimical to Warner–Lambert, or whether he was involved in mis-

conduct. However, Plaintiff denies being involved in any misconduct in his deposition (see pages 88 and 149).

This Court holds that the facts concerning Plaintiff's alleged misconduct are conflicting. This is therefore a question of fact to be determined by the jury as there is insufficient evidence to make a determination. Accordingly, it is

**Ordered** that Defendant's Motion for Summary Judgment is **denied,** and Plaintiff's Motion for Partial Summary Judgment as to liability is **denied.**